# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

FILED

November 25, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | NO. 02C01-9608-CR-00280 |
| Appellee, | ) | |
| | ) | SHELBY COUNTY |
| VS. | ) | |
| | ) | HON. CHRIS CRAFT, |
| ALVIN ROBINSON, JR., | ) | JUDGE |
| | ) | |
| Appellant. | ) | (First Degree Murder) |

## UPON REMAND FROM THE SUPREME COURT OF TENNESSEE

**FOR THE APPELLANT:**

**A. C. WHARTON**
Shelby County Public Defender

**W. MARK WARD**
**BETTY THOMAS**
Assistant Public Defenders
201 Poplar Avenue, Ste. 201
Memphis, TN 38103-1947

**FOR THE APPELLEE:**

**JOHN KNOX WALKUP**
Attorney General and Reporter

**WILLIAM DAVID BRIDGERS**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

**WILLIAM L. GIBBONS**
District Attorney General

**JERRY R. KITCHEN**
Assistant District Attorney General
201 Poplar Avenue, Ste. 301
Memphis, TN 38103-1947

OPINION FILED: _____

AFFIRMED

**JOE G. RILEY,**
**JUDGE**

**O P I N I O N**

This premeditated first degree murder case is again before this Court for reconsideration following remand from the Supreme Court of Tennessee in light of State v. Willie Williams, ___ S.W.2d ___ (Tenn. 1998). The sole issue upon remand is whether the failure of the trial court to charge the lesser offense of criminally negligent homicide was harmless error. We conclude that Williams is dispositive and find harmless error. Therefore, we affirm the judgment of the trial court.

**PROCEDURAL HISTORY**

Defendant, Alvin Robinson, Jr., was convicted by a Shelby County jury of premeditated first degree murder and sentenced to life imprisonment without the possibility of parole. In his original appeal to this Court, defendant presented two issues for our review: (1) whether the evidence was sufficient to support the conviction, and (2) whether the trial court erred in failing to properly instruct the jury. This Court concluded the trial court erred in failing to instruct on the lesser offense of criminally negligent homicide and remanded for a new trial. The other issues raised on appeal by the defendant were found to be without merit. *See* State v. Alvin Robinson, Jr., C.C.A. No. 02C01-9608-CR-00280, Shelby County (Tenn. Crim. App. filed December 3, 1997, at Jackson).

The Supreme Court of Tennessee granted permission to appeal and remanded to this Court "for reconsideration in light of ... State v. Willie Williams, ___ S.W.2d ___ (Tenn. 1998)." State v. Alvin Robinson, Jr., No. 02C01-9608-CR-00280, Shelby County (Tenn. filed November 9, 1998, at Jackson).

**FACTS**

The essential facts of the homicide were set forth in our original opinion.

2

The defendant arranged to have the victim, Charles Moore, repair his car at the Overton Crossing Car Center. The defendant originally sought to have an acquaintance, John Muse, do the repair work but ultimately decided Muse's estimate was too high. After the repair work had been completed, the defendant complained several times to Muse that he did not believe the victim had repaired his car properly, and he suspected the victim had not installed parts the defendant had purchased from Auto Zone for the vehicle.

In February of 1994, the defendant had an argument with the victim over the $ 200.00 the defendant had paid to have the car repaired. During this argument the defendant "slapped around" the victim with a telephone. Roger Miller, the lessor of the garage, arranged for a meeting between the defendant and the victim following this incident so they could resolve the dispute. Miller testified that after the meeting he thought the two men had reached an agreement. The defendant denies that this altercation ever took place.

At approximately 2:00 p.m. on March 15, 1994, the defendant visited Muse because his car had stalled several times that day. Muse informed the defendant that he needed to have the car fixed properly. The defendant stated he was either going to get his money and his parts back from the victim so Muse could repair the car properly or "he was going to kill the S-O-B and get it over with . . . [because] he was tired of messing with him." Muse observed that the defendant had a pistol in his back pocket. The defendant stated he always carried a pistol with him for protection; however, he denied threatening to kill the victim if his money was not returned.

At approximately 4:00 p.m., the defendant arrived at the Overton Crossing Car Center, where both the victim and Steve Kuehner, or "Smut," were working. The defendant calmly asked the victim for his $ 200.00. When the victim said he did not have the money, the defendant pulled out his gun and shot the victim once in the chest. The defendant told Kuehner, "when the cops come tell them some big white guy done it." Witnesses testified the defendant drove away immediately after the shot was fired. As the defendant left the scene, he told Kuehner "you better not say anything. I'll get my buddies on you."

Several minutes later, the defendant called the garage and asked Miller "what was up." When Miller related that the victim had been shot, the defendant asked "well, is he dead?" When Miller said he believed the victim was alive, the defendant said "Damn, I thought I killed the m///--f///--." The victim died within a few minutes. The cause of death was a gunshot wound to the chest and abdomen with internal bleeding. The victim was shot from more than two feet away. Prior to trial, the defendant called Miller and told him to convince Kuehner not to testify or "somebody on the outside . . . could take care of Smut [Kuehner] if he did."

3

The defendant disputes the other witnesses' description of the murder. According to the defendant, when he arrived at the garage and asked the victim for the $ 200.00, the victim stated another customer would be arriving shortly to pay him and this money would be used to reimburse the defendant. The defendant testified that while he was waiting for the customer to arrive, the victim asked the defendant if he could borrow some money. The two men argued, and the defendant stated the victim asked Kuehner to retrieve a shotgun from a back room. While retreating from the victim, the defendant slipped, and, as he was getting up, he observed Kuehner heading towards the room where the shotgun was kept. The victim was approaching the defendant with a monkey wrench in his hand. The defendant testified he was afraid of the victim because he had overheard the victim threatening to shoot other customers and his own wife in the past. The defendant testified he pulled his gun to scare the victim and it accidentally discharged. He told Kuehner, "man I didn't mean to do it [shoot the victim]." After arguing with Kuehner about what to do next, the defendant testified he panicked and fled the scene. He felt no one would believe his version of what occurred because he had shot a white man. The defendant stated he fled from the garage about ten minutes after the shooting. He denied telling Kuehner to give the police false information, calling Miller after the shooting, threatening Kuehner not to testify, or telling Miller to convince Kuehner not to testify.

Two defense experts testified regarding the defendant's mental state. Dr. Little testified the defendant was not retarded or psychotic, he had good contact with reality, and had good intellectual skills. He also testified the defendant had significant personality problems, was aggressive, and was manipulative, particularly when it placed him in a better light. Dr. Little found the defendant suffered from depression brought on by severe psychological stressors, and made a tentative diagnosis of intermittent explosive disorder. Dr. Little stated he had no doubt the defendant could have premeditated murder, although it was possible the murder was committed on impulse. Dr. Hutson, who also testified for the defense, stated that the defendant was able to appreciate wrongfulness and was capable of premeditation.

## FAILURE TO CHARGE LESSER OFFENSE

The trial court charged the indicted offense of premeditated first degree murder as well as the lesser offenses of second degree murder and voluntary manslaughter. Although the defendant also requested the jury be charged as to

4

criminally negligent homicide, the trial court refused. This Court in the original appeal held that there was sufficient evidence to justify a jury charge on criminally negligent homicide; therefore, we reversed and remanded for a new trial.

## STATE V. WILLIAMS

The Supreme Court in Williams concluded that the erroneous failure to instruct on a lesser offense is subject to harmless error analysis. ___ S.W.2d at _____. The Court further concluded that the failure to instruct as to voluntary manslaughter was harmless error because the jury was instructed as to the lesser offense of second degree murder but convicted the defendant of the greater charged offense of premeditated first degree murder. Id. at ____.

The above holding in Williams is dispositive of this appeal. In the case *sub judice* the jury was instructed as to premeditated first degree murder and the lesser offenses of second degree murder and voluntary manslaughter. The jury convicted the defendant of premeditated first degree murder in spite of the other charged offenses. Under the holding of Williams, the failure to charge the lesser offense of criminally negligent homicide was harmless error.

## CONCLUSION

In light of State v. Williams and after a careful review of the record, the judgment of the trial court is affirmed.[1]

---

[1]Presiding Judge Joe B. Jones authored this Court's original opinion. Judge Jones is now deceased; therefore, only two judges participated in this opinion.

_____
**JOE G. RILEY, JUDGE**


**CONCUR:**


_____
**DAVID H. WELLES, JUDGE**

6